Case number 253247 R S et al. v. Lucas County Children Services et al. Argument not to exceed 15 minutes per side. Mr. Lewis Schneider, you may proceed for the appellant. Good morning, your honors, or I guess good afternoon, and may it please the court. My name is Lewis Schneider and I represent the appellants in this case. Two used to be kids and now they're adults. So the court is actually already familiar with this case. It came up once before on a motion dismiss that was granted by the district court. That was reversed and sent back down to the district court. There's a lengthy discussion in that first case of the abuse that my client suffered in the Haynes household, which is where they were placed when they were taken away from their mother and her boyfriend by Lucas County Children Services. And there were a lot of different things in this case and it really got narrowed down at the end based on this exception to qualified immunity that is provided by this court's jurisprudence as well as the jurisprudence of the United States Supreme Court, which says, you know, if there's a state-created danger, you can bring a claim under 1983 and you've got to meet three requirements to do that. You've got to show that there was an affirmative act by the state. We're not challenging the district court's determination of that because the district court agreed with us. I don't think anybody disputes the state-created danger theory here, do they? So really we're going to qualified immunity. And what I'm struck by is that you really make no effort in any of your briefing to respond to the district court conclusion that there wasn't clearly established law here, other than your reference to the wording of the court of appeals in its earlier decision dealing with a motion to dismiss. So am I right so far? In terms of whether or not there is a specific case law that addresses this that is on point from the Sixth Circuit that lays out the same kind of facts and provides an exception to qualified immunity under those same circumstances? Well, is there any case that deals with deliberate indifference under facts like this that you're relying upon? Or are you relying upon what the prior panel said based on your allegations? Both. Obviously what the prior panel said is a correct interpretation of the law, if it can be shown. And then if you take a look at the prior case law, you'd have to look at Arledge v. Franklin County, which is a 2007 case from the Sixth Circuit. In that case, it was somewhat similar, but there is no specific exact factual pattern such as the fact pattern in this case. And that's going to be... Well, what case is even close in terms of how much further does a caseworker have to go than what the record shows they went to here? In other words, how much is enough? Where do we look for a case that would tell the caseworkers here that they should have done more under the facts of this case? You look at Arledge. And in Arledge, they held that it wasn't enough, that what the caseworkers did, there's an establishment of qualified immunity there because they didn't do enough. But you take a look at Arledge and kind of what it lays out, the facts here go beyond that. And the reason the facts here go beyond that is because there is a significant amount of information that was presented to the two caseworkers in this case, Hickey and Von Sacken, that showed, look, the Haines are not good people. These kids should not be with the Haines. You've got to do more than just say, well, this is unsubstantiated in this report that we've got to look at, where six different things pop up. Now, this is an entirely new standard that you're injecting in oral argument, that these are not good people. I don't know whether they're good people or not, but I do know that you made allegations in your complaint, and you backed it up with references to exhibits, Exhibit A, and those reports don't say, they don't even come close to saying what you alleged in your complaint. And that's what the prior panel relied upon, the allegations. Apparently, they didn't look at the reports, because you continue to say, presumably, they're bad people, because there were substantiated allegations against both the woman and the man. There are no, in this record, substantiated allegations against either of them. So what do we do with that? You have to look at the facts and circumstances surrounding the information that's in the complaint. There seems to be total misstatement in the complaint that a prior panel of this court relied upon. The information that we had at the time was that those six items in that Sackler's report that came back. But you had the reports, you attached them as an exhibit. It's a sealed exhibit attached to your complaint. It's the same reports that we're dealing with now. Yes, we had one page. You say they say one thing, but the reports say something else. I don't necessarily believe that they say something else. They say that Alisa was involved in an indicated, a substantiated, and another substantiated case of abuse. Stop right there. She was involved? Yes. She was the mother of children that were apparently abused by her ex-husband in the middle of a divorce.  From that, you're saying that that was a substantiated allegation against her that therefore, in today's words, makes her a bad person? I think that what the facts have shown with regard to Lisa Haines and Anthony Haines is that they are bad people. And I don't think that there's any dispute that Anthony Haines and Lisa Haines are bad people. Lisa Haines was a convicted liar, and she had convictions for lying in her record. But does that make somebody likely to be a perpetrator of sexual crimes? It makes them dangerous to have seven children placed with them if they are involved with issues of prior abuse and involved in prior cases and are not trustworthy. More investigation needs to be done into their background, into what they were in jail for. Investigation needs to be done with regard to investigating and talking to the people that were involved in these allegations and whether or not they were appropriately substantiated or not substantiated, what she did to prevent them, all those different things. That wasn't done. What case do you have that comes close to saying that you can't rely upon the reports that they had in front of them that didn't substantiate the allegation or the guilt of the two people that are involved here? Where do we go? Where do we look to a case that would have alerted these caseworkers to do more than they did? There is no Sixth Circuit case on point that directly addresses that, Your Honor. Is the problem with the standard? And we, of course, have to follow whatever the precedent is with respect to the standard. I mean, it's a matter of common sense. It would seem that some of the things that the state employees did know about might have occasioned further investigation that in fact occurred. But as a panel, we can't make up a new standard. I don't disagree with you. And putting it another way, if there is no case, then how was the law clearly established? I know what the prior panel said, because they took your word that there were substantiated allegations. So I think we just put aside the prior panel decision. So how do you win on clearly established if there's no case? Even if there's not a case specifically on point, if you go back and take a look at the Sixth Circuit's precedent with regard to placement of children into foster care, and like I said, the Arledge case is a case that addresses that. So you've got to take a look at, okay, what do the people that are taking the kids out of the home or out of the parental custody situation and putting them into? What are they looking at and what are they doing? They've got to do more than what was done in this case. There's never going to be an exact case that's factually on point until there's the first case that is factually on point. So I understand, Judge McKeague, your concern that I can't say, well, you know, on such and such date, there was this case, exact same fact pattern, and the Sixth Circuit said exactly this. I cannot do that. I'm not suggesting there has to be an exact same case. It's clear that there doesn't. But you can't proceed with a level of generality. The Supreme Court has also made very clear that. So you've got to find sort of a case that's close enough. And I'm just curious, this case you continue to refer to, how do you pronounce that? Arledge? Arledge. How's that spelled? A-R-L-E-D-G-E. It's not in the table of contents of your, at least your opening brief. Is it in your reply brief? No, Your Honor. You asked for an example, and I'm providing an example to you, Your Honor. But so if it's your best case, why isn't it in your briefs? Because it's, even it is not on point, Your Honor. And there is no prior Sixth Circuit case law that says, you know, these social workers need to do X, Y, and Z. You know, this is not helping when you refer to a case you didn't cite, and then you explain that it's not on point. Your Honor, you asked for the best case out there that addresses that issue. Unfortunately, there is a dearth of Sixth Circuit case law that addresses the particular issue that is applicable to these social workers in this case. And going back to what Judge Gibbons said, I do not expect this panel to be able to just change the standard. However, there always has to be, quote unquote, the first case. And that is, what is at issue here? This is a case where, if you take a look at the actual standard, the state knew or should have known that its actions specifically endangered the plaintiff. Yeah, they knew or should have known that if you've got somebody who's got six previous hits on the SACWIS system, that somebody who has a prior conviction for, you know, making misrepresentations and falsifying information and is in jail for that, that that person, that if you take children away from their parents and put them with these people who have this kind of aura of problems around them, that you are placing those children in a dangerous condition, in a dangerous place that is... When you say, well, there's got to be a first case. There can be a first case to establish a constitutional violation. I get that. At least I'm still stuck in clearly established. You can't win if the case before us is the first case where a court, our court, says it's clearly established. You just can't. So what do we do? You go back to the actual language of the test, which says that the state knew or should have known that its actions specifically endangered the plaintiff. And I understand Judge McKeague, your point, which is you as a panel and the district court need to have a prior case on which it explains to these people, hey, don't do that. But if it's clear in this type of situation that you've got, people with these issues, and you're not investigating them, and you're not making sure that they're safe and good for these children to go with. So go back to Judge Ritz's point. We'll deal with the woman for just a second. Why was it so clear, as you say, to the social workers that because this woman's own children were abused by her now then ex-spouse, who she had tried to keep away from these kids? How does that establish the 10, how does that, how is that even a clue that 10 years later, the caregivers here were going to sexually abuse these kids? Your Honor, I'm out of time. May I answer your question and then? Yes, you may. Okay, thank you. It is a clue. It's just something that is worth further investigation. And had they done further investigation, and more importantly, had they explained all this to the children's mother who consented to this placement, none of this would have happened. Because the mother, and it's clear on this, and the district court ignored this, the mother said the reason that I let my children go to the Haines home is because the Lucas County children's services officers and the two defendants in this case specifically said, or did not tell me that they had any issues or hits that came up on the SACWIS system and did not tell me anything about their criminal history. Thank you. You're from the Appellee, please. Sure. Kevin Pittuck, Assistant Lucas County Prosecutor. I'm here on behalf of the remaining two defendants in this case, Rebecca Von Sacken and Susan Hickey. Let me get right to some of the questions that you asked. I think this is better to handle it this way. Number one, Anthony Haines and Alyssa Haines are bad people. They're evil. Anthony Haines is serving life in prison. But his evil did not manifest itself until well after the children were placed with him in this case. He actually molested other women and went to trial in 2017. He's now serving life in prison. So yes, he's a bad person. Well, if you read my prior case involving this group, it was a collection of pastors that were preying upon young kids. This is notorious where we were. There were three different pastors from the area. Yes, he was part of a group of three that did it at a church. And there were a number of women, girls actually, who were abused by the three of them. The horrible facts. Yes. So how do you respond to the allegation that these hits were enough to have required further investigation? Well, they weren't under Ohio law. None of the hits, so to speak, were disqualifying as Ohio law has written in terms of what these people were. They were non-resident, excuse me, non-relative caregivers. Under that standard, you would need a substantiated complaint of abuse and neglect to deny them that right. None of them had a substantiated case of abuse and neglect prior to July of 2014. Afterward, yes. But before then, no. So you're saying for what the case workers did or failed to do, we would have to hold that it was a constitutional violation for not following Ohio law? Yes. Is that what it comes down to? My next point, Judge, you mentioned the Arledge case. The reason it's not in their brief, it's in my brief. And I will tell you, his reading and my reading are very different. In that case, this court affirmed the district court who granted summary judgment for child care workers in a case somewhat like this, except there, they never even conducted a background check. They didn't bother to do that. And this court found, nevertheless, that there was no clearly established case law at the time that required that sort of thing. So I mean, that's a case I cited as support for my position. I can tell you there's- Amonzola, or that's- No, it's called A-R-L-E-D-G-E. Okay, I got it. It's in my brief. I mean, I lean on it. You cite it repeatedly. In that case, counsel and others were using, I just want to make sure I understand this standard, this deliberate indifference standard. Is that right? Yes. Would you articulate that differently than opposing counsel did? Well, the way you have articulated it is the defendants must be aware of facts which lead to them drawing an inference that there was a serious risk of substantial harm, and they must have also then drawn that inference. They must have some sort of knowledge that the harm might be possible, and they didn't. That's not here. None of that's here. If you look at- None of the cases you cited, there's no clearly established precedent that what they did in following the Ohio Revised Code and the Ohio Administrative Code in terms of who could be a non-relative caregiver, they followed those standards. There's yet to be a case that has come out that says otherwise. Well, one thing that's arguably helpful to the plaintiffs in Arledge is the reference that you can prove deliberate indifference circumstantially by showing the risk was so obvious the official had to have known about it. So what we're examining, as I understand it, is did these hits make it so obvious that one or the other of these bad actors were going to abuse these kids 10 years later? No, because none of the offenses were substantiated. And the fact that she had been involved, the fact that she may have been- Mrs. Haynes was involved with men who actually abused her, because she was never substantiated. She was only the caretaker in a couple of cases. There was only one case against him, and it was unsubstantiated. It couldn't have been proven. Under Ohio law, substantiated is where they have the proof. They have the goods, in essence, kind of like a conviction. Unsubstantiated is where they don't have the proof, and they have to let it go. Well, let me make Mr. Snyder's argument for him. If you find that the mother, that sexual abuse occurred to her own kids while they were in her custody, apparently, can't you make an argument that that's a pretty big red flag? It could be a red flag, I guess. But there was nothing here otherwise that triggered any sort of concern or problem by either of the caseworkers. And you should know, in terms of the caseworkers here, they actually had different roles. The caseworker, Hickey, was the assigned caseworker. And she had nothing to do with the background checks. She came in after those were conducted. She did the monthly visits. She helped prepare for the custody hearings. To the extent that there's any problem with the background, that shouldn't involve her at all. The only one that was involved in the background information, well, first initially was Ryan Parker, the night of the incident, which brought out the... And then later, Rebecca von Sacken relied upon that. She also relied upon the fact that both Haines's had been approved by Lucas County Children's Services. And they were actually caring for another child at the time. So it had already been the same SACWIS records had been run, the same criminal background checks and fingerprints had been taken. They were caring for someone named Denise Temple. She's mentioned in our brief. But that's another reason why they thought there was not a problem here. They're already caring for one other child. They've already been through the system. I'm not sure what that says about whether the system was working. As you can see, here, at times it does not. But like I said, the evil here really manifested itself after the placement of the seven children with Anthony and Alyssa Haines. In our prior, our colleague's prior decision in this case, correct me if I'm wrong, but the decision found at the motion to dismiss stage that von Sacken had knew of the risk and consciously disregarded it. So what's changed? Well, because this is a civil rule 56 case, not a civil rule 12 case. Factually, what has changed? Well, I had to assume all the allegations were true. They are not true. I mean, all the damage, as has been mentioned by Judge McKee, not all the facts alleged in the complaint are so. Why did you have to assume them to be true at that stage if the complaint had a characterization of the reports, but the reports were attached as exhibits? If the language in the reports refuted the allegation in the complaint, that's where I'm just really kind of fascinated, where this went awry? One thing we didn't get, first of all, we did have a little argument. And first of all, it was deemed not necessary. But that's just something I misjudged. Were the reports, I didn't really understand from my discussion with Mr. Schneider, were the reports that are attached as exhibit A, the same reports that we're now dealing with for these five or six different what's being referred to as hits? Are they the same ones? I think so, Judge. One thing I did not do in preparation for today was to go back and look at the initial complaint. So I don't know for sure, but I think so. One thing we did have from the time of the time this court reversed and sent back the two claims against the two defendants, that's when all the documents were actually marshaled and produced and actually reviewed. So. So you didn't make the argument to the prior panel either. No. The allegations were not consistent with attachments. That was not something that was addressed. All right. Something I misjudged. Well, that's helpful to know. And I appreciate your candor. I wish, having you here, you mentioned it today, I wished I would. But it was something I missed at the time. Perhaps I ought to fix that oral argument. I don't know. Well, there was an amended complaint after remand. Yes. There actually, yeah, there was an amended complaint. But I don't think it changed in any substance. There were just some things that were cleaned up in terms of people who were dismissed. Because there were a number of parties that, initially this case was against the Board of Commissioners and a bunch of other individuals. And they've all been dismissed. We're now finally down to just the last two. So from your perspective, representing the municipality, if we were to entertain this concept of there wasn't a, there was a constitutional violation because these caseworkers didn't do as much as, in hindsight, arguably they could have or should have done, how do we draw that line? As I've seen the case, I don't know that 42 U.S.C. 1983 is really a tort statute. You're talking more lines of a negligence sort of duty. They should have done more. That's something that's inappropriate, I think, at least in the cases that I've read, in terms of a conclusion under 1983. I mean, the only claim left in this case is the 1983 claim. I've not seen anything that suggests that negligence is a proper basis or standard used for liability under Section 1983. Well, the case law is clear that negligence is not enough under 1983, but it's always an open question. Was it negligence or was it something more? And again, I can rely upon the fact that they followed the revised code in terms of what they were supposed to find as disqualifying. They didn't find it, and so they did not disqualify these people as non-relative caregivers. If there are no more questions, Judge, I'd just like to ask you to affirm the judgment issued by Judge Knapp in this case. Thank you, counsel. We'll hear rebuttal. So it seems like a pretty important point. Do you agree that these caseworkers did what the Ohio law tells them they were supposed to do? I think there's a minimum of whether or not these people are automatically disqualified, but that's not the same as what the standard is contained in the test that's applicable here. And the test that is applicable here is if you take a look at the circumstances and if the circumstances are such that they should have done more. I understand that your position may be that they can't just do what Ohio says they got to do more. I get that. But the basic question is, do you fellow counsel that they at least did what Ohio law required them to do? I would say that they were not prohibited from placing the children with the Hanes under Ohio law. I don't think that is the standard under what's contained in this court's precedent. And this court's precedent says if you take children out and there are things that you have to look at and you don't look at them because this stuff pops up and the circumstantial evidence is such that anybody in this same situation would look at it and say, hey, don't do that and you still proceed to do it anyway, that's the problem. And the issues that have come up with regard to the six hits, one of them was specifically related to Anthony Hanes, the most recent one. And it was involving somebody who who did end up being abused by Anthony Hanes, Taneeth Temple, who he mentioned. The report said that it was unsubstantiated because he denied it, which so what? But it also said that the person that he allegedly molested denied that that happened. That's what the report says, if I'm right. Your Honor, I'm out of time. You may answer. OK. That's what the report says. But at the end of the day, your argument is they should have gone behind the report and re-interviewed this victim. It would be one possibility, right? May I answer? Yes. When six hits like this come up and you're taking seven kids out from their mother and you're telling their mother they're going to go into a safe place and she's consented that based on their representation, absolutely, Your Honor. And I understand the court's concern about there's no prior case law on this. I've conceded to that. There is no specific Sixth Circuit case law on this. But the Sixth Circuit case law says that when you have these types of circumstances that come up under that three-part test, under that third one, that somebody's got to take a look at that. And the district court made its mind up on that without construing the facts in favor of my client, which is really the main issue that's been appealed here. The district court looked at all this and said, this is what I think. Twelve people in a jury box ought to be making that determination, not the district court judge. And I understand this court's concern about what was pled in the complaint and what eventually came out. But at the end of the day, you've got two kids who were horribly abused by monstrous people who are very bad people. Well, we all agree that nobody looks good in this. It's not just about not looking good in this, Your Honor. It's about the plaintiffs did enough in this case to set forth enough evidence that, if construed in their favor, allows them to get this to a jury who can make that determination, not the judge in this case. And the standard here for the review of this is completely de novo. The facts should be construed in my client's favor. And there should be at least enough to get this to pass summary judgment. And we would respectfully request that this court reverse the district court's opinion and allow the case to proceed to a jury. Thank you, counsel. Thank you. Case will be submitted. We appreciate your arguments.